T.C. Summary Opinion 2001-34

UNITED STATES TAX COURT

STEPHEN J. ROLING AND PEGGY A. ROLING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15224-99S.                    Filed March 20, 2001.

Stephen J. Roling and Peggy A. Roling, pro sese.

<u>George W. Bezold</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case is before the Court on petitioners' Motion for Litigation and Administrative Costs filed pursuant to section 7430 and Rule 231.  This case was filed pursuant to the provisions of section 7463 of the Internal Revenue Code as in effect at the time the petition was filed. Unless otherwise indicated, all other section references are to the Internal Revenue Code in effect for the year at issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

## Background

Respondent filed a response to petitioners' motion in which he agrees that petitioners: (a) Have substantially prevailed with respect to the amount in controversy; and (b) meet the net worth requirements as provided by law.

Respondent does not agree that petitioners: (1) Have substantially prevailed on the most significant issue in the case; (2) have exhausted their administrative remedies; (3) have not unreasonably protracted the administrative or Court proceedings; or (4) have claimed a reasonable amount of costs.

More importantly, respondent argues that his positions in the administrative and Court proceedings were substantially justified.

The parties have not requested a hearing in this case and the Court concludes that a hearing is not necessary to decide this motion. See Rule 232(a)(2). Accordingly, the Court decides the motion after consideration of the petition, the stipulation of settlement, petitioners' motion for litigation and administrative costs, respondent's response to the motion, and petitioners' response to respondent's response to the motion.

Petitioners resided in Bellevue, Iowa, at the time they filed their petition.

## The Examination

### Timber Expenditures

Stephen Roling (petitioner) operates a logging business as a sole proprietor. As part of his business petitioner enters into "right to cut" contracts with landowners. The contracts allow petitioner to enter onto the land to cut specifically identified trees within a certain time frame, usually from 12 to 15 months. Petitioner does not actually cut the timber until he has a buyer for it. The buyer, a lumber mill, picks up the cut trees from the landowner's property.

Typically, petitioner makes a payment of 20 percent of the contract price (downpayment) at the time the contract is signed, and the balance is paid at the time the timber is cut. The landowner retains ownership of the trees until the contract is paid in full. Petitioner, a cash basis taxpayer, deducted the downpayments on the contracts to cut in the year the payments were made.

Upon examination of petitioners' Federal income tax return for 1994, the Internal Revenue Service (IRS) determined that petitioners' contract downpayments were not currently deductible. It was respondent's position at the examination that the contract payments must be capitalized into "inventory" to match

expenditures with income in the same taxable period. The adjustment proposed was to disallow the deduction in 1994 of downpayments on five contracts identified by petitioner as signed in 1994 where it appeared the trees were not cut and sold by him until 1995.

Unreported Income

During the examination of petitioners' return for 1994, petitioner advised the examining agent that he had some income that was not reported on the return. The examining agent performed a source and application of funds analysis that indicated petitioners had spent $5,061 more than reported funds available. Petitioner explained that he had sold a tractor that cost $550 for $1,050, and he recalled getting a $5,000 loan from his brother.

Consideration by Appeals Division

Petitioners' argument that their lack of ownership in the trees precluded them from having an "inventory" and their explanation for the unreported income were not accepted by the examiner. Petitioners took their case to the Appeals Division of the IRS (Appeals).

In Appeals, petitioners were represented by an enrolled agent (EA) through whom they argued that as owners of an economic interest in timber they were entitled as lessees to deduct the payments at issue in the year paid. By a letter dated April 20,

1999, petitioners' EA sent to Appeals a copy of a handwritten note as evidence of a loan of $10,000 from petitioner's father to them in July of 1994.

On June 22, 1999, Appeals issued the notice of deficiency in this case containing the $15,672 adjustment denying the timber contract downpayment deduction, the unreported income adjustment of $5,061, and the adjustment determining an accuracy-related penalty under section 6662.

Post-Appeals

The petition was filed with the Court on September 20, 1999, and by notice dated March 29, 2000, was set for trial at the Court's Des Moines trial session beginning on June 19, 2000.

Petitioners retained counsel to represent them in this matter. Counsel for the parties discussed the timber cutting contracts and the unreported income issues for a period of weeks. Counsel for the parties agreed that inventorying was not appropriate treatment for petitioners' timber payments. During their discussions, counsel for petitioners provided respondent's counsel with documentation showing that with respect to two of the five contracts, trees were cut and sold in 1994. Since the income for the sale of the trees was reported in the same year as the deduction of the downpayment, the adjustment for the two contracts totaling $8,950 was conceded by respondent's counsel. As part of the overall settlement, petitioners agreed that the

$6,772 of payments for the other three contracts are not deductible and must be capitalized.

Counsel for petitioners submitted to respondent's counsel unsworn, and on June 15, 2000, sworn statements from petitioner and his father as evidence of the June 1994 loan to petitioners. Petitioners also submitted petitioner's father's Federal income tax return for 1994. Bank records of petitioner's father from 1994 were unavailable.

As part of the overall settlement, respondent conceded the unreported income adjustment and the accuracy-related penalty in June of 2000. On July 21, 2000, the Court filed the parties' stipulation of settlement in which it is agreed that there is a deficiency in income tax due from petitioners for 1994 in the amount of $2,055. Since respondent conceded the unreported income item, the deficiency necessarily relates to a portion of the timber contract downpayment adjustment.

## Discussion

We apply section 7430 as most recently amended by Congress in the IRS Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727. However, the amendments made by RRA 1998 to section 7430 apply only to costs incurred or services performed after January 18, 1999. Id. at 729. To the extent the claimed costs were incurred on or before January 18, 1999, we shall apply section 7430 as amended by the

Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 1038, 1055.

Requirements Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding. Sec. 7430(a) and (b)(1), (3). Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceeding. Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430. See Rule 232(e). Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding. See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement. See sec. 7430(c)(4)(A).

Respondent concedes that petitioner has satisfied the requirements of section 7430(c)(4)(A).  Petitioner will nevertheless fail to qualify as the prevailing party if respondent can establish that respondent's position in the administrative and court proceedings was substantially justified.  See sec. 7430(c)(4)(B).

Substantial Justification

The Commissioner's position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  See Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988).  In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact.  See Pierce v. Underwood, supra; Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person".  Pierce v. Underwood, supra at 565 (construing similar language in the Equal Access to Justice Act).  Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'".  Maggie Management Co. v.

Commissioner, 108 T.C. 430, 443 (1997) (quoting Pierce v. Underwood, supra at 566 n.2).

The relevant inquiry is "whether the Commissioner knew or should have known that * * * [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position. See Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable. See Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, the Commissioner's concession remains a factor to be considered. See Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by the Commissioner as of the date of the notice of deficiency. See sec. 7430(c)(7)(B). The position of the United States that must be examined in light of the substantial

justification standard with respect to the recovery of litigation costs is the position taken by the Commissioner in the answer to the petition.  See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of this Court; Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988). Ordinarily, we consider the reasonableness of each of these positions separately.  See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144.  There was no answer filed in this case.  See Rule 175(b).  There is, however, no indication that respondent's position changed between the issuance of the notice of deficiency and the partial concession by respondent's counsel.

The issue of whether respondent's positions in the underlying proceedings were substantially justified shall be addressed first.  In order to decide whether a position of respondent was substantially justified, we must review the substantive merits of the case.

### Reasonable Basis In Fact

Petitioners do not suggest that respondent applied the wrong legal standard in taking a position on their documentation of the loan in 1994 as an explanation of apparent unreported income. Petitioners argue that respondent's position on the adjustment was not reasonable in fact based on the evidence they presented.

As to that argument, respondent asserts that it was incumbent upon petitioners to substantiate the fact and amount of the loan. It is reasonable, according to respondent, not to concede an adjustment until he has received and verified adequate substantiation for the item in question. He therefore concludes that as to the unreported income adjustment, his position was reasonable when taken and appropriately conceded when substantiation was provided to Appeals.

Petitioners argue that they provided to Appeals a copy of a "loan document" that verifies a $10,000 loan received by them from petitioner's father. Mere presentation of a note or "loan document" may not be sufficient evidence of the existence of such a loan. See Sullivan v. Commissioner, T.C. Memo. 1985-217. Further documentation and testimony might be required. See Kim v. Commissioner, T.C. Memo. 2000-83; Coutsoubelis v. Commissioner, T.C. Memo. 1993-457; Facuseh v. Commissioner, T.C. Memo. 1988-10; Mahigel v. Commissioner, T.C. Memo. 1983-529; Adams v. Commissioner, T.C. Memo. 1980-398.

It is reasonable for respondent to make an adjustment for an item and refuse to concede the adjustment until he has received and verified petitioners' substantiation for the amount adjusted. See Beecroft v. Commissioner, T.C. Memo. 1997-23; Simpson Financial Servs., Inc. v. Commissioner, T.C. Memo. 1996-317; McDaniel v. Commissioner, T.C. Memo. 1993-148.

We are persuaded that respondent's position on the unreported income issue was reasonable.  Respondent's position was based on petitioners' failure to fully account for the item.  Further, the issue was settled within a reasonable period after petitioners gave sufficient information to respondent.  See Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52; Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277; Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984); McDaniel v. Commissioner, supra.

### Reasonable Basis in Law

According to petitioners, respondent unreasonably determined that they were not entitled to current deductions for downpayments on "right to cut" timber contracts.  Petitioners argue that the payments on the timber contracts were either amounts subject to regular depletion deductions or depletable advanced royalty payments deductible for 1994.

In the case of timber, taxpayers are allowed as a deduction in computing taxable income, a reasonable allowance for depletion under regulations prescribed by the Secretary.  See sec. 611.  In the case of standing timber, the depletion must be computed solely upon the adjusted basis of the property.  See sec. 1.611-1(a), Income Tax Regs.  The depletable basis applicable to timber is contained in section 1.611-3(a), Income Tax Regs. which

describes the cost basis provided by section 612, which, in turn, describes an "adjusted basis" provided by section 1011. The adjusted cost basis under section 1011 for determining gain or loss from the sale of property is the cost basis or other basis determined under section 1012 adjusted as provided by section 1016.

Annual depletion deductions are allowed only to the owner of an "economic interest" in standing timber. See Palmer v. Bender, 287 U.S. 551, 557 (1933); Georgia-Pacific Corp. v. United States, 648 F.2d 653, 657-659 (9th Cir. 1981); sec. 1.611-1(b)(1), Income Tax Regs.

For purposes of this discussion it is assumed that petitioners' right to cut contracts made them owners of economic interests in timber in the year at issue. See International Paper Co. v. United States, 33 Fed. Cl. 384, 407-409 (1995). As owners of economic interests in timber, petitioners would, as they contend, be entitled to depletion deductions. That would not, however, change the result in this case because "The depletion of timber takes place at the time timber is cut", not at the time of payment. Sec. 1.611-3(b)(1), Income Tax Regs. To the extent that depletion is allowable in a year with respect to timber the products of which are not sold during the taxable year, the depletion allowable is included "as an item of cost in the closing inventory of such products for such year." Id.

Since, with respect to three of the contracts at issue, petitioners did not cut the timber in the year that the downpayment was made, they were not entitled to a current depletion deduction for the payment.

Under regulations provided by the Secretary, "advanced royalties" in the case of mineral deposits and standing timber may be the subject of depletion deductions. Sec. 1.612-3(b), Income Tax Regs. An advanced royalty is a required payment of royalties on a specified number of units of timber annually whether or not cut within the year that may be applied against the royalties on the timber thereafter cut. See sec. 1.612-3(b)(1), Income Tax Regs. The facts in the record of this case are not sufficient to support the treatment of petitioners' downpayments as advanced royalties. The timber contracts are not part of the record. There is no evidence that petitioners' downpayments were based on a specified "number of units of timber", or that the downpayments were capable of being applied to any future royalties, and there were no "annual" payments. From the facts available in the record, we are unable to find that petitioners were entitled to treat their downpayments on timber contracts as advanced royalties.

Even if petitioners' payments did constitute advanced royalties, we find no authority for their current deductibility by petitioners. Section 1.612-3(b)(1), Income Tax Regs., allows,

in certain circumstances, <u>the payee</u> receiving the advanced royalty payments on standing timber to take a depletion deduction from his gross income in the year the payments are made. And section 1.612-3(b)(3), Income Tax Regs., allows the payer of amounts under a "minimum royalty provision" to deduct them when paid, <u>but only in connection with mineral property</u>.

Petitioners' payments are not described in section 1.612-3(b)(1), or (3), Income Tax Regs., and their downpayments must be capitalized. Section 1.631-2(e)(1), Income Tax Regs., requires that amounts paid for timber cutting rights be treated as the cost of timber and "constitute part of the lessee's depletable basis of the timber, irrespective of the treatment accorded such payment in the hands of the lessor."[1]

Once petitioners' counsel presented to respondent's counsel sufficient evidence that two of the contracts represented situations where the timber was cut in the same year the payments were made, respondent conceded the issue within a reasonable time. See <u>Harrison v. Commissioner</u>, <u>supra</u> at 265; <u>Ashburn v. United States</u>, <u>supra</u>; <u>Wickert v. Commissioner</u>, 842 F.2d 1005 (8th

---

[1]Generally, sec. 162 requires that an item be paid or incurred <u>and the benefit exhausted</u> during the taxable year to be a business deduction. Where the value of the item extends beyond the taxable year, that is evidence that the expenditure is a cost of acquisition, a capital item. See <u>Wells Fargo & Co. v. Commissioner</u>, 224 F.3d 874 (8th Cir. 2000), affg. in part and revg. in part sub nom. <u>Norwest Corp. v. Commissioner</u>, 112 T.C. 89 (1999); <u>Central Tex. Sav. & Loan Association v. United States</u>, 731 F.2d 1181, 1183 (5th Cir. 1984); see also sec. 1.461-1, Income Tax Regs.

Cir. 1988); <u>McDaniel v. Commissioner</u>, T.C. Memo. 1993-148.

We find that respondent's positions on the disputed issues were reasonable positions sufficiently supported by the facts and circumstances in petitioner's case and the existing legal precedent.  See <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988).

Because we find respondent's positions to have been reasonable, we cannot find petitioners to be "prevailing" parties, and their motion will therefore be denied.  Because we find that petitioners are not prevailing parties, we do not address the other issues raised by respondent.

To reflect the foregoing,

<u>An appropriate Order</u>

<u>and Decision will be entered</u>.